PARLIN & ORENDORFF CO. v. CITY OF GREENVILLE.

(Circuit Court of Appeals, Fifth Circuit. January 5, 1904.)

No. 1,283.

1. CONTRACT FOR GARBAGE FURNACE — MUNICIPAL CORPORATION—REFUSAL OF COMMITTEE TO APPROVE WORK.

Where a contractor agrees to furnish the material and to erect on the land of a municipal corporation a garbage furnace according to plans and specifications, which are part of the contract, and warrants its capacity to consume a named quantity of garbage without emitting offensive odors, to be paid for when completed and tested to the satisfaction of a committee of the town council, and the contractor performs the contract according to the plans and specifications, and, the test being made, the furnace is shown to have the capacity warranted, and in all things to comply with the contract, the committee cannot defeat the contractor's right of recovery by capriciously and unreasonably refusing to express its satisfaction with the work.

2. SAME—ACTION FOR PRICE—SUFFICIENCY OF DECLARATION.

A declaration in a suit for the contract price of the furnace, which shows such facts, and alleges that the committee, "without just cause or reason, and moved by caprice and prejudice, has refused to express satisfaction with such tests," although the work and tests "should have

fully satisfied the committee and the defendant, and would have satisfied persons of ordinary care, caution, prudence, and fairness," is not subject to demurrer as showing no cause of action, nor to special demurrer, because it is not alleged that the furnace was tested to the satisfaction of the committee.

In Error to the Circuit Court of the United States for the Northern District of Texas.

The plaintiff, an Illinois corporation, brought this suit against the defendant, a Texas municipal corporation. It is alleged in the petition that the parties made a contract, which is fully described. It is made part of the petition, and is in these words:

"State of Texas, County of Hunt. This contract, made and entered into by and between Parlin and Orendorff Company, a corporation of Canton, Illinois, party of the first part, and the city of Greenville, a municipal corporation of Hunt county, Texas, party of the second part, on the day and date hereinafter written, witnesseth:

"That the party of the first part, for the consideration hereinafter mentioned, covenants and agrees with the party of the second part, to build, erect and construct for said second party one certain garbage furnace, being the same character and make of furnace of which letters patent No. 517,301 were issued to Ward Risley by the United States Commissioner of Patents on March 27th, 1894. Said furnace to be constructed as per plans, proposition and specification for a thirty-five (35) yard garbage furnace, of date March 10, 1900, submitted by said party of the first part to the city council of the said city of Greenville, party of the second part, which said specifications and proposition are hereto attached to this contract, marked as an exhibit, and made a part of this contract. Said party of the first part agrees to begin the construction of said furnace on or before the 14th day of April, 1900, and in the event of its failure to begin the construction of same by said date, then the mayor of the party of the second part may declare this contract annulled, by giving written notice of his election so to do to said first party.

"Said party of the first part further agrees to complete and furnish in all things said furnace or plant, and have the same ready for operation within 105 days from the date of this contract, and within 30 days after the expiration of said 105 days, to have said furnace ready for final test at any time thereafter that the committee of the council of party of second part may require such test to be made, which said test shall (be) made within a further period of 30 days, and after 5 days' notice to first party of date agreed upon by said committee for said test.

"Said furnace is to be built on a site selected by the second party within the limits of the city of Greenville, said site to be selected and the first party notified of such selection and the location thereof, prior to said 14th day of April, 1900.

"Said party of the second part covenants and warrants that the said furnace shall have a capacity per 24 hours of 35 cubic yards of night soil, dead animals and other miscellaneous garbage, except earth, ashes, glass and metals; and covenants and warrants that said furnace will receive and consume said amount of such night soil, dead animals, refuse and filth, except earth, ashes, metals and glass as aforesaid, once in every 24 hours. And further covenants and warrants that said furnace and manholes thereof shall be of sufficient dimensions and capacity to the above end, and that the furnace and manholes called for in the plans and specifications aforesaid, will be of sufficient size and capacity to receive and consume without injury to the plant, the carcasses of all dead animals, night soil and other miscellaneous garbage, and without emitting from said furnace any offensive odors or smells.

"That said party of the first part also agrees to make, at its own cost and expense, all repairs which may become necessary to said furnace during the period of one year after the final test thereof, by occasion of defective material or plan used in the consideration (construction) thereof.

"In consideration of the faithful performance of the covenants and agree-

ments herein contained, the party of the second part agrees to furnish all fuel to try and test said furnace, and to receive, pay for and accept the same when completed, and tested, according to the satisfaction of the committee of the common council of the second party, in accordance with this contract, and at the time of the delivery thereof to said second party, to pay to the first party, in cash, the full sum of four thousand dollars ($4,000.00), and to leave the said furnace in the possession of the said first party until such payment has been made in cash.

"The second party further covenants and warrants that the making of this contract has been duly authorized by its common council, and that it has on hand, applicable to the payment of said furnace the full amount of the purchase price thereof, according to this contract.

"Executed in duplicate this 11th day of April, A. D. 1900.

"The City of Greenville,
"By R. M. Chapman, Mayor.

"Attest: D. W. H. Taylor, Secy.

"Parlin and Orendorff Company,
"By Wm. M. Robinson, Agent."

Performance of the contract on part of the plaintiff and its breach by defendant is alleged as follows:

"That the plaintiff has in all things complied with the terms of said contract, and has erected said garbage plant on the land of defendant to which it became annexed, and completed same in accordance with said contract and the plans and specifications therein referred to, and said furnace has been tested and found in all things to comply with said plans and specifications and requirements of said contract. But the committee of the common council of the defendant, without just cause or reason, and moved by caprice and prejudice, has refused to express satisfaction with such tests, although the operation of said furnace under the tests aforesaid, by reason of the compliance with the contract on the part of plaintiff in the construction of said furnace disclosed thereby, should have fully satisfied said committee and defendant, and would have satisfied persons of ordinary care, caution, prudence, and fairness. And the defendant failed to receive said furnace, and has wholly failed and refused to accept said furnace, and still fails and refuses to pay for the said furnace, as it bound itself to do under said contract.

"That by reason of the performance by the plaintiff of the said contract by building said garbage furnace according to the plans and specifications aforesaid, and causing the same to be tested as aforesaid, and discharging every obligation resting upon it under said contract as aforesaid, the said sum of four thousand dollars mentioned in said contract has become due and payable to the plaintiff, and defendant became liable and promised to pay to the plaintiff said sum of money on, to wit, the 10th day of October, 1900, the date when said garbage furnace was tested as aforesaid.

"That, though payment has been demanded by plaintiff of defendant of said sum, the defendant has wholly failed and refused to pay the same or any part thereof, to plaintiff's great damage in the sum of $5,000.00."

The petition concludes with a prayer for judgment. The defendant in error demurred to the petition, assigning:

(1) That same is insufficient to entitle the plaintiff to recover.
(2) "Specially excepting to said petition, defendant says that that portion of the same is insufficient wherein plaintiff alleges that 'the committee of the common council of defendant without just cause or reason, and moved by caprice and prejudice, has refused to express satisfaction' with the tests made of said plant, because it appears from said petition that said plant was to be tested to the satisfaction of the committee of the common council of the defendant, and not by the defendant, and it nowhere appears from said petition that said plant was tested to the satisfaction of such committee, or that such committee refused to test the same, or that they were guilty of fraud or such gross mistake as to indicate collusion and fraud in refusing to be satisfied with such plant."

The court sustained both the general and special demurrer. The plaintiff declined to amend, and the cause was dismissed. It is assigned here that the court erred in sustaining the demurrer.

Wendel Spence and J. M. McCormick, for plaintiff in error.

E. B. Perkins, J. E. Gilbert, W. A. Bomer, and H. Carpenter, for defendant in error.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

SHELBY, Circuit Judge, after stating the case as above, delivered the opinion of the court.

By the terms of the contract the garbage furnace was not to be paid for until it was "completed and tested according to the satisfaction of the committee." It is not alleged in the petition that the work was completed and that the test was made to the satisfaction of the committee. The petition shows that the committee has not expressed its satisfaction with the furnace, and, on the contrary, has refused to accept it. When a person agrees to do certain work for another, to be paid for only when done to the "satisfaction" of the other or of a third party, there are unquestionably circumstances under which the contractor may enforce payment, although the promisor or third party withholds the expression of his satisfaction. Are such circumstances or facts alleged in this petition? That is the question raised by the demurrer. To answer it, regard must be had not only to the special averments relating to the withholding by the committee of its expression of satisfaction with the work, but to the other averments showing the nature and scope of the contract.

The plaintiff agreed to build on the defendant's land a garbage furnace, which is a permanent structure or immovable fixture. The case, therefore, differs from similar contracts as to manufactured articles or personal chattels where the parties, upon a rescission, could be placed in their former condition without loss, or with trifling loss, to the promisee. It is important to note, also, that the furnace was to be built according to plans and specifications which were made part of the contract.

Having in view these facts, which appear from the petition, let us examine the special averments on which the plaintiff bases its right to recover, notwithstanding the committee withholds expression of its satisfaction:

"Said furnace has been tested, and found in all things to comply with said plans and specifications and requirements of said contract. But the committee of the common council of the defendant, without just cause or reason, and moved by caprice and prejudice, has refused to express satisfaction with such tests, although the operation of said furnace under the tests aforesaid, by reason of the compliance with the contract on the part of plaintiff in the construction of said furnace disclosed thereby, should have fully satisfied said committee and defendant, and would have satisfied persons of ordinary care, caution, prudence, and fairness."

The cases decided where contracts containing somewhat similar conditions have been construed have usually been conditional promises to pay upon the satisfaction with, or approval of, the work or article by the promisor himself or a third person. In examining

the averments of the petition to test their sufficiency in the light of the authorities, we do not lose sight of the fact that in this case it was not an arbitrator to be satisfied, nor the promisor, but the "committee of the common council of the second party." The city council by and from which the committee must be selected govern and control the city (Rev. St. Tex. arts. 412, 404); and it is therefore contended that, in effect, this contract is one in which the condition is for the satisfaction of the promisor. But it is contended, on the contrary, that the committee, when selected, would stand as arbitrators between the parties, and that, therefore, the contract is one which provides that the work shall be done to the satisfaction of a third party.

The courts have had frequent occasion to construe contracts for the rendition of services, the manufacture of articles, and the construction or improvement of works, wherein it was agreed as a condition precedent to payment that the services, articles, construction, or improvement should be satisfactory to the promisor. Such contracts are of two kinds: First, where the right of decision is completely reserved to the promisor without his being required to disclose the reasons for his determination, and all right to inquire into the grounds of his decision or to examine and overhaul his determination by the promisee or the courts is absolutely excluded. The law regards the parties as competent to contract in that manner, and, if the contract is to that effect, it is the law of the case. Second, where the promisor is held to have undertaken to act reasonably and fairly and to found his determination on grounds which are reasonable, just, and sensible. Where the construction of the contract puts it in the second class, it follows as a necessary implication that the promisor's decision, in point of correctness and the adequacy of his grounds, is open to judicial determination.

Whether a particular contract falls within the first class, where the promisor's decision is final, or in the second class, where it is subject to judicial investigation, depends on the special circumstances of each case. In contracts which involve the taste, feelings, or sensibility of the promisor, he may reject an article or work arbitrarily which has been mutually agreed should be made or done to his satisfaction. Pennington v. Howland, 21 R. I. 65, 41 Atl. 891, 79 Am. St. Rep. 774 (pastel portrait); Gibson v. Cranage, 39 Mich. 49, 33 Am. Rep. 351 (portrait); Zaleski v. Clark, 44 Conn. 218, 26 Am. Rep. 446 (bust); Brown v. Foster, 113 Mass. 136, 18 Am. Rep. 463 (suit of clothes).

There are also contracts subject to the same construction where questions of taste are not involved. It sometimes appears from the terms of the contract and the circumstances surrounding the parties that the promisor retained the unqualified right to reject the article or work if not satisfied with it; that his freedom of choice was not to be exposed to any contingency or subject to any review. Such contract may be injudicious and indiscreet on the part of the contractor who agrees to do work and furnish material on such a hazardous contingency, but, when such is clearly the agreement, the **courts cannot afford relief against the consequences resulting from**

a bargain fairly made by competent parties. Wood Machine Co. v. Smith, 50 Mich. 565, 15 N. W. 906, 45 Am. Rep. 57 (reaping machine); Singerly v. Thayer, 108 Pa. 291, 2 Atl. 230, 56 Am. Rep. 207 (elevator); McCarren v. McNulty, 7 Gray, 139 (bookcase).

When the terms or the nature of the contract, or the circumstances, are such as to make it doubtful whether the contractor has really agreed that the promisor shall have the absolute and unreviewable right to reject the article or the work if not satisfied with it, the courts have usually construed such contracts as "agreements to do the thing in such way as reasonably ought to satisfy the defendant." In Hawkins v. Graham, 149 Mass. 284, 21 N. E. 312, 14 Am. St. Rep. 422, where a heating apparatus "satisfactory" to the promisor was to be furnished, it was held that the satisfactoriness was "to be determined by the mind of a reasonable man, and by the external measures set forth in the contract, not by the private taste or liking of the defendant." In reaching this conclusion the court was influenced somewhat by the fact that the consideration furnished "was of such a nature that the value will be lost to the plaintiff, either wholly or in great part," by a different construction of the contract.

In Rawlins v. Honolulu Co., 9 Hawaiian, 262, the plaintiff agreed to work in a skillful and proper manner to the satisfaction of the defendant. Construing the contract, the court said that the defendant was bound to be satisfied if the work was done in a skillful and proper manner. The court observed that the fact that one is the sole judge does not authorize him to act whimsically or in bad faith.

In Northern Pacific Co. v. Portland (Or.) 12 Pac. 5, it was held that, where a city by its contract agrees to pay for an improvement upon its completion and the approval of it by the city, it cannot avoid its liability by delaying to approve the work when it is completed according to the contract.

In Duplex Boiler Co. v. Garden, 101 N. Y. 387, 4 N. E. 749, 54 Am. Rep. 709, the plaintiff by contract agreed to alter certain boilers in the manner specified, the stipulated price for the work to be paid by the defendants as soon as they are satisfied that the boilers as changed are a success. It was held that a simple allegation of dissatisfaction on the part of the defendants, without a good reason, was no defense. The court said "that which the law will say a contracting party ought in reason to be satisfied with, that the law will say he is satisfied with."

In Doll v. Noble, 116 N. Y. 230, 22 N. E. 406, 5 L. R. A. 554, 15 Am. St. Rep. 398, the contract sued on was for staining and rubbing woodwork in two houses owned by the defendant. The work was to be done in the best workmanlike manner and to the entire satisfaction of the owner. The court held that, if it was done in the best workmanlike manner, the owner could not defeat recovery of the price agreed to be paid by arbitrarily and unreasonably declaring that it was not done to his satisfaction.

In Folliard v. Wallace, 2 Johns. 395, Kent, C. J., construed a contract whereby the defendant was to pay "three months after being well satisfied," etc., as to title to land. He said: "The law in this case will determine for the defendant when he ought to be satisfied."

The rule that the defendant cannot defeat an action on such a contract by arbitrarily and unreasonably declaring that the work is not done to his satisfaction is upheld by many authorities. 1 Beach Mod. Law of Contracts, § 104, and cases there cited.

Kent, in Folliard v. Wallace, supra, noted the fact that this view is sustained also by writers on the civil law: "There is a real obligation contracted if I promise to give you something in case I judge it reasonable; for it is not left to my choice to give it to you or not, since I am obliged to do so if it is reasonable." 1 Pothier on Obligations (2 Am. Ed.) 22, marg. p. 48.

The defendant contends that the committee which was to be satisfied with the work and the test was, in effect, a third person. It is claimed that the case is similar to Martinsburg, etc., Railroad v. March, 114 U. S. 549, 5 Sup. Ct. 1035, 29 L. Ed. 255. There March contracted to do grading and masonry on a section of the company's railroad, and "to prevent disputes" it was mutually agreed that the company's engineer should determine the amount and quantity of work, and that whenever the contract should be completely performed on the part of the contractor, and the engineer should certify the same in writing, with his estimate, the company shall within 30 days after the receipt of the certificate pay to the contractor the sum due. The court held that in the absence of "fraud, or such gross mistake as would necessarily imply bad faith, or a failure to exercise an honest judgment, the action of the engineer was conclusive upon the parties." It was held on the facts alleged that the decision of the engineer was binding; but it is clearly implied by the language of the opinion that the court would go behind the decision of the engineer in either one of the three named events. Sweeney v. United States, 109 U. S. 618, 3 Sup. Ct. 344, 27 L. Ed. 1053; Chicago, etc., Railroad v. Price, 138 U. S. 185, 11 Sup. Ct. 290, 34 L. Ed. 917; United States v. Gleason, 175 U. S. 588, 20 Sup. Ct. 228, 44 L. Ed. 284; and Boettler v. Tendick, 73 Tex. 488, 11 S. W. 497, 5 L. R. A. 270—are to the same effect.

These cases show that where the contract names a third party to estimate and approve the work his decision is conclusive, except that the courts may go behind it for (1) fraud, (2) bad faith, (3) to use the words found in the last case cited, "or any dishonest disregard of the rights of the contracting parties."

In the petition before us it is alleged that the furnace was built in conformity with the contract; that it was tested and found to meet its requirements; and that the committee, "without just cause or reason, and moved by caprice and prejudice, has refused to express satisfaction with such tests." Taken in connection with the facts stated in the petition, this is equivalent to an averment that the committee has failed to exercise an honest judgment in discharging the duty imposed upon it. When the facts alleged show that the committee has acted unjustly, and it is averred that they so acted from prejudice and caprice, it is equal to an averment that it acted in bad faith. If the committee be considered a third person, selected to approve the work as a condition precedent to payment, an unreasonable refusal to approve it, caused by prejudice and caprice, will

dispense with the necessity of its approval. Such action is, if not a fraud, certainly bad faith, for it is an unjust and capricious disregard of the rights of the contractor. 1 Beach, Mod. Law of Contracts, § 100, and cases there cited; Cotton States Life Ins. v. Edwards, 74 Ga. 220, 230.

We hold that where a contractor agrees to furnish the material and to erect on the land of a municipal corporation a garbage furnace according to plans and specifications, which are part of the contract, and warrants its capacity to consume a named quantity of garbage without emitting offensive odors, to be paid for when completed and tested according to the satisfaction of the committee of the town's council, and the contractor performs the contract according to plans and specifications, and, the test being made, the furnace is shown to have the capacity warranted, and in all things to comply with the contract, the committee cannot defeat the contractor's right of recovery by capriciously and unreasonably refusing to express its satisfaction with the work. A due regard to justice seems to require such construction of the contract before us.

It follows that a declaration in a suit for the contract price which shows these facts, and alleges that the committee "without just cause or reason, and moved by caprice and prejudice, has refused to express satisfaction with such tests," although the work and tests "should have fully satisfied the committee and the defendant, and would have satisfied persons of ordinary care, caution, prudence, and fairness," is not subject to demurrer, as showing no cause of action, nor to special demurrer, because it is not alleged that the furnace was tested to the satisfaction of the committee.

The court, we think, erred in sustaining the demurrers to the petition.

The judgment must be reversed, and the cause remanded, with instructions to overrule the demurrers to the petition.