[No. 17747. Department Two. February 10, 1923.]

# OLYMPIA BOX & PACKAGE COMPANY et al., Respondents, v. PACIFIC VENEER COMPANY, Appellant.[1]

WITNESSES (52)—COMPETENCY—PRIVILEGED COMMUNICATIONS—ATTORNEY AND CLIENT. Rem. Comp. Stat., § 1214, disqualifying an attorney from testifying without the consent of his client as to communications or advice in the course of his employment, cannot be invoked by a corporation which he helped to organize to take over the assets of another, where he was consulted by two trustees, acting individually, and was employed and paid by such other corporation, notwithstanding they had the same trustees.

CORPORATIONS (156)—REPRESENTATION OF DIFFERENT CORPORATIONS BY SAME PERSON—EVIDENCE OF FRAUD—ADMISSIBILITY. Upon an issue as to the fairness of a transaction whereby the assets of one corporation were transferred to another, organized for the purpose, evidence is admissible of false representations made by the trustees to prospective stockholders in the new corporation, notwithstanding the suit was brought by the new corporation rather than by the individual stockholders.

SAME (130, 156)—REPRESENTATION OF DIFFERENT CORPORATIONS BY SAME PERSON—FRAUD—BURDEN OF PROOF—EVIDENCE — SUFFICIENCY. Under the rule that contracts between corporations having the same trustees will be closely scanned, and that the burden of proving fairness and good faith rests upon the party asserting it, findings that a corporation sold its property to another promoted for the purpose, at an unfair and excessive price of $36,000, are sustained, where the company had title to only about one-third of the real estate which the trustees pointed out to prospective stockholders in the new corporation, resulting in an overvaluation of more than $10,000 although there was little to indicate actual fraud.

Appeal from a judgment of the superior court for Thurston county, Wilson, J., entered October 5, 1922, upon findings in favor of the plaintiff, in an action for rescission, tried to the court. Affirmed.

*Frank C. Owings* and *Thos. L. O'Leary,* for appellant.

*James O. Marts* and *P. M. Troy,* for respondents.

[1]Reported in 213 Pac. 24.

Tolman, J.—On or about June 1, 1921, a written contract was entered into between appellant, as vendor, and the respondent corporation, as vendee, for the sale of the maufacturing plant theretofore operated by appellant to the respondent corporation, the purchase price named being $36,000, payable in installments. During all of the negotiations leading up to, and at the time of the execution of the contract, the same persons, with one exception, constituted the members of the boards of trustees of the two corporations. Respondent in its complaint alleged, in effect, that appellant, through its board of trustees, wrongfully and fraudulently took advantage of that fact and caused the contract to be executed with intent to deceive, and did thereby deceive, the respondent corporation and its other stockholders, in that less real estate was conveyed than was represented would be conveyed, and that the value of the whole property conveyed did not exceed $25,000.

It seems to be agreed between counsel that the law is that contracts between corporations whose trustees or directors are identical, or nearly so, will be closely scanned by the courts, and that the burden of establishing the fairness and the good faith of the transaction so consummated rests upon the party asserting it. To comply with this rule and overcome the effect of the identity of the two boards, appellant sought to show that its reason for making the contract grew out of its need for more capital in its business, and the thought that, by making the enterprise a cooperative one, additional capital could be acquired and labor difficulties could be avoided. With this in mind, two of appellant's officers consulted an attorney, who afterwards organized the respondent corporation and became one of its trustees, fairly laying the situation before him and inquiring whether it would be better to proceed by

amending the articles of incorporation of the appellant corporation and increasing its capital stock, or by organizing a new corporation on the cooperative plan which would purchase appellant's plant and continue. the business. For reasons apparently good, not necessary to be here stated, the attorney advised the latter course, which was followed, and the respondent corporation came into being, four of its trustees being trustees of appellant, and the fifth being the attorney who acted in its incorporation. After some consultation and consideration, those active in the management of the appellant, who were also trustees of the respondent corporation, fixed the purchase price of the plant at $36,000; twenty thousand dollars representing the value placed upon the personal property, and sixteen thousand dollars representing the value placed on the real estate. It now appears that appellant had title to only about one-third of the real estate which it then occupied, the remainder being partly covered by leases, partly consisting of an unvacated public street, and partly being land of another which it occupied by oral consent of the owner. The land owned and conveyed was described by metes, bounds and distances, and the description was such that, without a survey marked on the ground, no one could tell therefrom whether or not it included the whole tract occupied, and none of appellant's officers or trustees knew the exact boundaries of what it actually owned.

The trial court held, in effect, that a contract entered into under the circumstances here shown is voidable and may be set aside either upon the ground of fraud or unfairness and overreaching; that there was little to indicate actual fraud in the transaction, but that there was an over-valuation of the real estate in the sum of more than $10,000, and an overreaching to that extent, and that the contract was manifestly unfair to

the respondent corporation and its stockholders; and accordingly entered a judgment setting aside the contract, awarding recovery of the money paid thereunder, denying relief on the cross-complaint seeking the enforcement of the contract, and embodying other features not especially complained of.

Appellant makes many assignments of error, but discusses them all under a few heads, which course we shall also follow:

(1) The trial court permitted the attorney who organized the respondent corporation and became one of its trustees to testify as to all that took place from the time he was first consulted by two of the appellant's trutees. It is contended that he was disqualified under subd. 2 of § 1214 of Rem. Comp. Stat., which reads: "An attorney or counsellor shall not, without the consent of his client, be examined as to any communication made by the client to him, or his advice given thereon in the course of professional employment." The record fails to show that the attorney was ever employed by, or in any way acted for, the appellant. True, the men who first consulted him were appellant's officers, but they consulted him as individuals, and when the course of action was agreed upon he acted only for and on behalf of the respondent corporation, and the only compensation which he ever asked or received came from that source. Of course, the respondent corporation consented to his testifying and is not now complaining.

(2) Evidence was received to the effect that one or more of the officers and trustees of the appellant made representations to a number of prospective stockholders of the respondent corporation touching the value of the property to be conveyed, and the extent of the real estate then owned, pointing out what was claimed to be included within its boundaries, which were in fact

untrue and misleading. It is contended that this evidence tended to show a cause of action, or causes of action, in favor of the individual stockholders thereby defrauded, and not to prove that the contract between the corporations was fraudulent or unfair. While it may be conceded that the evidence indicated would be admissible in a suit by such a stockholder against the individual making the representations, or against the respondent company, of which the individual was then a trustee and officer, still that seems to present no valid reason why it is not also admissible here. The individuals said to have made these representations were, first, trustees of the selling corporation; and second, promoters of, and when organized, trustees and officers of the buying corporation. They were vitally interested in seeing that the buying corporation, through sales of its stock, obtained money with which to pay the purchase price, otherwise the contract would be useless, and anything they did to further that end would tend to show their purpose and intent in committing the respondent corporation to the contract. Furthermore, it appears that the contract was ratified or adopted by a vote of the stockholders of the respondent corporation, and such action may have been necessary under its by-laws. Whether necessary or not, such ratification was evidently considered desirable. Nor does the fact that the individuals who purchased stock upon the faith of the false representations had individual causes of action bar or defeat the cause of action which the respondent corporation is here asserting.

(3) Appellant vigorously attacks the findings of the trial court to the effect that the purchase price named in the contract was grossly in excess of the real value of the property transferred, contending that there was no evidence properly before the court to sus-

tain such finding. We have considered tne objections to the evidence thus challenged and find that it was all properly admitted. The reasons pointed out as sustaining the objections to the testimony of the expert Wiggers, and the reception of the estimates and documents identified by him, go more to the weight to be accorded such evidence than to its admissibility.

We are convinced that the court's findings are sustained by a preponderance of the evidence, and that the facts distinguish this case from *Baker v. Seattle-Tacoma Power Co.,* 61 Wash. 578, 112 Pac. 647, Ann. Cas. 1912C 859; *Westland v. Post Land Co.,* 115 Wash. 329, 197 Pac. 44; *Colville Valley Coal Co. v. Rogers,* ante p. 360, 211 Pac. 732, and like authorities. At any rate, when it is borne in mind that the same men acted for both seller and buyer, and that it is the conceded duty of the courts to scrutinize the transaction closely, and as said in the *Westland* case, *supra,* "may even suspect fraud and overreaching," we cannot say that appellant has met the burden thus placed upon it.

The judgment appealed from is affirmed.

MAIN, C. J., FULLERTON, PARKER, and PEMBERTON, JJ., concur.